IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, # R-54570, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 17-cv-1122-SMY |
| FRANK EOVALDI, *et al.*, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Stateville Correctional Center ("Stateville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to excessive force, retaliation, unconstitutional confinement in a filthy cell, and deliberate indifference to medical needs while he was incarcerated at Menard Correctional Center ("Menard"). Plaintiff names 38 individual Defendants. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d

1

1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

Plaintiff's statement of claim is a 24-page, mostly chronological narrative that details his encounters with each of the 38 Defendants while he was confined at Menard between November 30, 2016, and January 4, 2017. (Doc. 1, pp. 28-51). Plaintiff was held for that entire period in Cell #443 in the North Two Cell House, Four Gallery. (Doc. 1, p. 28). The cell had been

flooded from water that overflowed from the sink because of a clogged drain; the toilet was also clogged and was filled with urine, feces, toilet tissue and blood. When Plaintiff flushed the toilet, the contents overflowed onto the floor. The cell was also contaminated with toilet water that leaked from the cell above and ran down the wall and underneath the cell's light fixture any time the toilet was flushed in the upper cell. The sink provided only warm water (no cold) for drinking. Plaintiff's mattress was contaminated with dried and moist blood, as were the walls, floor, and sink. The cell constantly smelled of human waste and mildew. It was infested with gnats, flies, and cockroaches or waterbugs that crawled on Plaintiff and stung him while he tried to sleep. Plaintiff developed sores and blisters on his skin from the insect bites, as well as skin irritation, itching, and possible ringworm from the filthy mattress, which was also contaminated with human hair. The dust and hair throughout the cell and lack of ventilation caused him to sneeze. The cell had no functioning light, hindering Plaintiff's ability to read and write, and he got headaches and dizziness whenever sun would shine into his eyes. (Doc. 1, pp. 28-29).

Plaintiff arrived at Menard on November 30, 2016, as the result of a court writ transfer from Stateville Correctional Center. (Doc. 1, p. 28). Major F. Eovaldi came up behind Plaintiff while he was in the chapel building facing the wall, and grabbed Plaintiff's hands and fingers, twisting and bending them. Eovaldi told Plaintiff that he and Major J. Carter, Sgt. Hudson, C/O Spiller, William Spiller (of Internal Affairs), Lt. K. Brookman, and other officers knew that Plaintiff was returning to Menard that day, and had a "fucked up" cell waiting for him. (Doc. 1, p. 28). Eovaldi claimed that these Defendants and other officers had told all the staff members they know, not to do anything to correct the conditions in the cell, because they hoped Plaintiff would "get real sick" from being housed there. *Id.* Plaintiff was then escorted to Cell # 443 (described above).

On December 1 and 2, 2016, Sgt. Lindenberg came to Plaintiff's cell, where he observed the conditions and Plaintiff told him about all the problems with the cell. (Doc. 1, p. 29). Lindenberg told Plaintiff he should know that he would be getting mistreated by staff due to Plaintiff's past history of committing a staff assault. Lindenberg confirmed he was aware of the cell conditions before Plaintiff was placed there, and he was not going to do anything to fix the problems.

Also on December 1 and 2, 2016, C/O Sanders told Plaintiff that he was not going to have the cell cleaned or unclog the toilet or sink, because he was told that Plaintiff had filed court complaints against Menard staff, so Plaintiff would have to stay in the filthy cell. (Doc. 1, p. 29). Sanders escorted Plaintiff to a visit with a mental health professional (Ms. Franklin, who is not a Defendant), and warned Plaintiff that he had better not tell Franklin about the bad cell conditions or complain about staff mistreatment, because if he did, he would not like what was going to happen to him. Plaintiff did not report any of the cell problems or staff misconduct to Franklin, in fear of the consequences. Plaintiff did ask to speak to Sgt. Young (who was also with Sanders) alone. However, Young told Plaintiff they had nothing to talk about, because he would not be getting any cleaning supplies and the cell was going to stay the way it is. (Doc. 1, p. 29).

The remainder of the Complaint describes similar daily encounters with the other Defendants. Many of these individuals allegedly told Plaintiff that he was placed in the cell as retribution for his past assault on a fellow staff member. Nearly all of the Defendants also allegedly brought up the fact that Plaintiff had filed grievances and/or that he recently testified in this Court in another lawsuit about bad treatment by Menard staff members (a number of them named as Defendants in this action) – and referenced his litigation activity and/or his grievances

4

as the reason for Plaintiff's placement in the cell, as well as various Defendants' refusal to remedy the bad conditions.

According to Plaintiff, a group of Defendants engaged in a coordinated effort to arrange for his placement in the filthy cell. The officers who had Plaintiff housed in Cell # 443 then obtained the agreement of the other Defendants to leave Plaintiff in the cell, and take no action to correct the problems or provide Plaintiff with any hygiene or cleaning supplies, sheets, blankets, laundry services, access to showers, or clean clothing. Several medical-provider Defendants refused to provide Plaintiff with medical attention for his skin irritation or other health complaints, in support of the joint effort to keep Plaintiff in the miserable conditions as retaliation for his litigation and grievance activity.

Plaintiff alleges that all 38 Defendants had direct knowledge of the unsanitary cell conditions, yet refused to do anything to fix them and/or refused to move Plaintiff to another cell. These individuals are: Eovaldi (Doc. 1, p. 28),[1] Lindenberg (pp. 29, 41-42, 44-45), Sanders (p. 29), Lt. J. Engelage (p. 29, 40, 42), C/O Engelage (pp. 29-30), Sgt. M. Hudson (pp. 30, 34-35, 38), Lt. Witthoft (p. 30), Lt. Jetton (p. 30), Sgt. S. Young (p. 30), Major J. Carter (pp. 30, 41, 44), C/O Spiller (pp. 30-31), C/O Swisher (p. 31), Lt. Hof (pp. 31-32, 43), Sgt. M. Laminack (pp. 31-32, 47-48), Lt. C. Bump (pp. 32, 35-36), Sgt. Mercer (pp. 32-33, 35), Sgt. Snell (pp. 33, 41), C/O J. Morris (p. 33), Lt. L. Mennerich (pp. 33-34, 41, 44-45), CMT Rena Engelage (Medical Technician) (p. 35), C/O Dennis Hartman (p. 36), C/O Roth (p. 36), CMT Aimee Lang (pp. 36-37), C/O J. Gardiner (pp. 37, 39, 42-44), CMT Nicole Marshall (pp. 37, 47-49), C/O B. Myers (pp. 38, 43, 49), Lt. K. Brookman (p. 39), Lt. K. Held (pp. 39-40), C/O J. Slavens (p. 42), C/O McCarthy (pp. 42-46), C/O Wooley (pp. 43, 45-46), C/O Sanders (p. 44), C/O Shaun Gee (pp. 45, 48), C/O Phelps (pp. 45-46), Sgt. William Spiller (p. 45), Major Raymond Allen (p. 49), Lt.

---

[1] All page references are to the Complaint (Doc. 1).

Scott (pp. 49-50), and Lt. Bruce Gutreuter (p. 50).

Of the 38 Defendants, the only individuals who did not directly tell Plaintiff that his prior lawsuit or grievances against Menard officers was the reason for their conduct toward him are Eovaldi (Doc. 1, p. 28), Lindenberg (pp. 29, 41-42, 44-45), J. Morris (p. 33), and Lt. Scott (pp. 49-50). However, Plaintiff alleges that Swisher told him that Eovaldi was one of the officers who decided to place and hold Plaintiff in Cell #443 because of Plaintiff's prior grievances (p. 33).

Medical Technician Rena Engelage told Plaintiff that she and her colleagues had agreed to destroy any sick call slips he sent to the Health Care Unit, and to deny him any medical treatment, except for his prescription medications such as Depakote that would show up in a blood test. (Doc. 1, p. 35). CMT's Lang and Marshall made similar comments to Plaintiff. Each of these 3 Defendants indicated that she was aware of his current medical complaints from having read his sick call slips. (Doc. 1, pp. 36-37, 47-49). Those complaints included dry throat and lips, nausea, vomiting, stomach pain, itching, dizziness, and headaches, among other issues. (Doc. 1, p. 47). Marshall even commented to Plaintiff that she believed he had already caught Hepatitis-C due to the cell conditions. (Doc. 1, p. 48). Marshall, Lang, and R. Engelage refused to treat Plaintiff for any of these conditions.

Several of the Defendants informed Plaintiff that they had him on "mail watch" so that if he tried to send out any grievances, they would be intercepted and destroyed. (Doc. 1, p. 33). On several occasions, he was not allowed out of his cell to shower or spend time in the yard. (Doc. 1, p. 38). Some officers told Plaintiff that they would falsify the shower logs to indicate that Plaintiff either received or refused a shower. (Doc. 1, p. 47). He was not given sheets or blankets, other than a single worn blanket that was full of holes. (Doc. 1, pp. 40-41).

Plaintiff seeks compensatory and punitive damages for the violations of his rights. (Doc. 1, p. 52). He further requests a preliminary and permanent injunction, to order that he not be housed again at Menard for the remaining duration of his sentence. *Id.*

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment excessive force claim against Eovaldi, for twisting and bending Plaintiff's hands and fingers on November 30, 2016;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against all Defendants, for placing and/or holding Plaintiff in an unsanitary cell contaminated with human waste, and/or refusing to relocate him or remedy the unhealthy conditions, between November 30, 2016, and January 4, 2017;
>
> **Count 3:** First Amendment claim against Eovaldi, Sanders, Young, Lt. Engelage, Officer Engelage, Hudson, Jetton, Carter, Witthoft, Officer Spiller, Swisher, Hof, Laminack, Bump, Mercer, Snell, Mennerich, Marshall, Rena Engelage, Hartman, Roth, Lang, Gardiner, Myers, Brookman, Held, Slavens, McCarthy, Wooley, Sanders, William Spiller, Gee, Phelps, Gutreuter, and Allen, for placing and/or holding Plaintiff in the unsanitary cell, to retaliate against Plaintiff for his litigation and/or grievance activity against Menard officers;
>
> **Count 4:** Eighth Amendment deliberate indifference claim against health care providers Marshall, Rena Engelage, and Lang, for refusing to provide Plaintiff with medical attention for the skin irritation, nausea, and other conditions he developed while housed in the unsanitary and contaminated cell.
>
> Each of these claims shall proceed for further review.

### Count 1 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Plaintiff alleges that Eovaldi gratuitously grabbed, twisted, and bent his hands and fingers, while Plaintiff was facing the wall inside the chapel building shortly after Plaintiff arrived at Menard. While Eovaldi applied this force, he told Plaintiff that he was headed for a cell that he hoped would make Plaintiff sick. Nothing in the Complaint indicates that any use of force against Plaintiff was needed to maintain or restore discipline. Therefore, at this early stage, Plaintiff's narrative supports a claim against Eovaldi for the excessive use of force, and **Count 1** shall proceed for further consideration.

### Count 2 – Unsanitary Cell

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*,

428 U.S. 153, 173 (1976)).  Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The conditions must have objectively resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions.  *Farmer*, 511 U.S. at 837, 842.  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions.  *Farmer*, 511 U.S. at 842.  It is well-settled that mere negligence is not enough.  *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Unsanitary conditions similar to those described herein by Plaintiff have been found to state a claim under the Eighth Amendment.  *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls); *see also*, *DeSpain v. Uphoff*, 264

9

F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim). Further, the denial of access to "adequate sanitation and personal hygiene items" may demonstrate a deprivation of "the minimal civilized measure of life's necessities." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006).

Plaintiff describes continuous exposure for over 30 days, to his own and other inmates' accumulated waste, which created unbearable odors. Every surface of the cell, including the mattress, was contaminated with either blood, waste, dirt, hair, or all of the above. The cell was also infested with biting insects. Plaintiff was never given clean linens for the bed, cleaning materials, or hygiene supplies that might have allowed him to mitigate the conditions, and was not allowed to shower.

Plaintiff also alleges that every Defendant was aware of the bad cell conditions, and despite this knowledge, some Defendants purposely placed him in the cell, and others intentionally refused to remedy any of the conditions or move him in a better cell. Based on these allegations, Plaintiff has adequately stated a claim for cruel and unusual punishment against all 38 Defendants. Accordingly, **Count 2** shall proceed for further review.

### Count 3 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857

F.2d 1139 (7th Cir. 1988). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted) (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act").

Plaintiff's retaliation claim against the 35 Defendants listed under Count 3 is based on alleged statements by these officials' that Plaintiff was being held in the unsanitary cell because he had filed grievances against them or other Menard colleagues, and/or had filed suit and testified in this Court about mistreatment by some of the Defendants and/or other Menard staff. Filing grievances and pursuing litigation are clearly protected First Amendment activities.

Many of the Defendants also allegedly told Plaintiff that they kept him in the unsanitary cell as a consequence for his assault on a Menard staff member in the past. However, assaulting a prison official (or being labeled as a "staff assaulter") is not an activity protected by the First Amendment. To the contrary, such conduct is outlawed by prison rules. Even if Plaintiff had been falsely accused of a staff assault, being charged with a violation of prison rules is also not a "protected activity" that would support a First Amendment claim. Therefore, Plaintiff cannot maintain a retaliation claim against a defendant whose only stated reason for holding Plaintiff in the bad cell was to punish him for being a "staff assaulter."

Three Defendants fall into this category – Lindenberg, Morris, and Scott. In Plaintiff's narrative describing his encounters with these officers, he does not claim that they mentioned anything about Plaintiff's grievance or litigation activity. (Doc. 1, pp. 29, 33, 41-42, 44-45, 49-50). Defendants Lindenberg, Morris, and Scott are therefore not included in Count 3.

Plaintiff also never describes any comments made to him by Eovaldi regarding a

11

retaliatory motive for his decision to house Plaintiff in the bad cell. However, another Defendant (Swisher) told Plaintiff that he and Eovaldi together engineered the cell placement because of Plaintiff's grievance activity. (Doc. 1, p. 31). Based on that allegation, Eovaldi is included in the retaliation claim.

At issue is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). Plaintiff has adequately described his prior litigation and grievance activity, as well as the adverse cell placement that followed. Moreover, 35 of the Defendants allegedly admitted that they subjected Plaintiff to this treatment because of his complaints against them. Therefore, the retaliation claim in **Count 3** shall also proceed.

### Count 4 – Deliberate Indifference to Medical Needs

As with the Eighth Amendment claim in Count 2, a claim for deliberate indifference to serious medical needs has two components. An inmate must show that he (1) suffered from an objectively serious medical condition, and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying medical treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*,

792 F.3d 768, 777-78 (7th Cir. 2015). That said, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Plaintiff claims that due to the unsanitary conditions in the cell, he suffered from nausea, vomiting, stomach pain, itchy skin and possible ringworm, dizziness, headaches, and a dry throat. These ailments arguably satisfy the objective requirement of a serious medical need, particularly when considered in combination. Plaintiff also claims that medical technicians Marshall, Rena Engelage, and Lang were all aware of his health complaints, yet purposely refused to give him any medical treatment for these conditions. Based on these allegations, Plaintiff may be able to sustain a claim for deliberate indifference to serious medical needs against Marshall, Rena Engelage, and Lang. Thus, **Count 4** shall proceed for further consideration.

## Pending Motions

Plaintiff's motion for the Court to correct case number (Doc. 4) is **GRANTED**. The Court takes notice that according to Plaintiff, the case number for one of the earlier cases listed in his litigation history, *Hoskins v. Dart*, is Case No.12-cv-1256 (N.D. Ill.), not No. 12-cv-4256. (Doc. 1, p. 16).

The motion to mail Plaintiff a complete copy of the Complaint (Doc. 5) is **DENIED**. After the Complaint was electronically submitted to the Court through Pontiac's Law Library, Plaintiff received a copy of just the first page of his Complaint noting the electronic filing information. This in fact is the proper procedure under the Court's General Order No. 2015-05, which sets forth rules for the electronic filing program. After library staff scans a prisoner filing,

the original document is returned to the prisoner, who is expected to keep it. Once the document is filed with the Court, the library staff will print the Notice of Electronic Filing (NEF) and the first page of any document that a prisoner has filed (which will demonstrate that the document has been electronically filed and confirm the number of pages filed with the Court). These copies will then be provided to the prisoner.

If Plaintiff wishes to order a copy of any document filed with the Court, he must send a request to the Clerk along with pre-payment in the amount of $.50 per page. *See* 28 U.S.C. § 1914(b). The cost for a copy of the 52-page Complaint (Doc. 1) is $26.00.

Finally, based on the allegations in the Complaint and Plaintiff's prayer for relief, the Clerk shall be directed to add a docket entry to reflect that Plaintiff is requesting injunctive relief. This request shall be referred to the magistrate judge for consideration.

Plaintiff's motion for recruitment of counsel (Doc. 10) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

The Clerk is **DIRECTED** to docket a motion for preliminary/permanent injunction, based on Plaintiff's request for such relief in the Complaint (Doc. 1, p. 52).

The Clerk is further **DIRECTED** to add the **DIRECTOR of the ILLINOIS DEPARTMENT OF CORRECTIONS (Official Capacity)** as a party to this action, for the purpose of implementing any injunctive relief to which Plaintiff may be entitled. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

The Clerk of Court shall prepare for Defendants **EOVALDI, SANDERS, LINDENBERG, YOUNG, LT. ENGELAGE, OFFICER ENGELAGE, HUDSON,**

14

**JETTON, CARTER, WITTHOFT, OFFICER SPILLER, SWISHER, HOF, LAMINACK, BUMP, MERCER, SNELL, MORRIS, MENNERICH, MARSHALL, RENA ENGELAGE, HARTMAN, ROTH, LANG, GARDINER, MYERS, BROOKMAN, HELD, SLAVENS, McCARTHY, WOOLEY, SANDERS, WILLIAM SPILLER, GEE, PHELPS, GUTREUTER, ALLEN, SCOTT,** and **DIRECTOR, ILLINOIS DEPARTMENT OF CORRECTIONS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 12, 2018**

s/ STACI M. YANDLE
United States District Judge
